Morning, Castle. You may proceed. Thank you. May it please the Court, my name is Jim Bopp. I represent and protect marriage. In fact, all the plaintiffs below, I will take 10 minutes, Dean Eastman would take 10 minutes, and I will take the rebuttal if rebuttal is allowed. Okay, and you're both experienced litigators, so you know how very difficult it is to stick to your time between each other, and we don't want you to kill each other by going over, so we'll let you watch your time, okay? I will, thank you. This case involves an attempt by a pro-traditional marriage group to gain an exemption from filing campaign finance reports and expunging those that have already been filed due to what the L.A. Times described as a, quote, vengeful campaign, end of quote, which raised the, quote, ugly specter of intimidation, as the New York Times saw it, of supporters of traditional marriage. Counsel, I appreciate the argument that you want to make. We've got a lot of heavy-duty stuff we need to plow through that is more substantively legal. And I would, for one, appreciate your starting off with the case that we ask you all to be prepared to discuss. Would you lead off on that, let us know whether, in fact, this case is moot in light of that case? It is not moot for at least three reasons, two of which I will address first. Okay. The distinguishing factor between Doe v. Reed and this case is we are asking for expungement of all the filed campaign finance reports where that was not a request in Doe v. Reed. I thought in Doe v. Reed the thought was it doesn't make any difference because it's on the Internet, so it's in the world, and therefore we can't give you any relief. Even expunging won't make a difference. Now, Judge Smith in dissent, a different Judge Smith, Judge Randy Smith in dissent, said no, that that is a relief that could be given, but I think that was rejected by the majority. Well, but that decision was under seeking injunctive relief, not expungement of the record. Does that really make a difference, though, counsel? I think so. What I'm struggling with here, Frank, and I hope you can help me with this, in that case it started out where they were trying to stop the disclosure prior to the election, and they got an injunction, it got overturned, the Supreme Court agreed, it was a facial challenge. Here, if I understand the facts correctly, most of your work has occurred after the election has occurred. The district judge denied any relief prior to the election. You filed the reports, and then you filed reports after the election. And then, if I recall correctly, like I forget how many years, but sometime thereafter, you then file this action seeking to expunge, but at a time when you yourselves had provided information over a period of time which had by then clearly gone on the Internet, people had mapped out the location of where people lived and the like. And, you know, we're struggling with the Lujan problem. You've got the third prong is that you've got to be able to redress a grievance. So even if you meet the first prong and the second prong, how can this Court redress the grievance that you have? Well, all you have to do is look at the response of the State to our requested or third issue, which is the expungement of all the reports that have been filed. And they lift page after page of while voters don't benefit from it, there's all sorts of people that would be wanting to access this information in order to like professors or journalists or maybe in future campaigns. I'm not understanding why Dovi Reed doesn't eliminate the expungement argument. And I know you started to explain that, but I'm not understanding it. So help me with that. We didn't ask for expungement in Dovi Reed because this was before that case was brought before the petitions were to be filed. In fact, months before the petitions were to be filed. In this case, because the harassment began after a lot of reports had been filed, after, in fact, the initiative had been adopted, at that point we asked for in the original complaint expungement of all the reports that had been filed. Hatterr. You were counsel in Reed, too, or at least one of the counsel, right? Yes. Hatterr, yes. And Hatterr is the case we rely upon from which a whole series of Ninth Circuit cases flow, which is 452, Fed Second, 673. The second reason, though, is that both this committee and John Doe first and, of course, now's committee are ongoing. They expect to participate in future campaigns regarding protecting marriage. So there are future reports to be filed by these very plaintiffs that we are asking injunctive relief against so that they would not have to be filed. So you want us to focus on the fact that or rather not focus on the fact that you've got all this information out on the Internet. You essentially want us to ignore that, and you're saying that the fact that that's out there is kind of irrelevant, but we want to focus on what's still here because there is a subset of people like professors and others that want to study it that will get access to the information. Whether or not they get it on the Internet is irrelevant. We want it out of the records of the State. Is that your focus at this point? Well, that's one of our arguments, and we think it's a strong argument. But the third point about the Internet is in the electronic posting by the State, they do not list the home address. The home address is only available on the written reports that are filed with the Secretary of State's – I'm sorry, with the FPPC. The State's. We want those written reports to be expunged. So it's actually the information. Are those available to the public? Are those written reports available to the public? They're currently available to the public. But not on the Internet. But they're not on the Internet. I thought somebody had mapped where all – all everybody lives and what those addresses were. Somebody has done that. We don't know how – you know, whether they – I just want to be sure I understand your argument. You're saying that only the – I guess the commission has the records, has the home addresses on. Yes. You want those out because their home address is private information, and yet that same information has been taken by whomever put it on a map, put it on listing, and you can find that on the Internet. What's the distinction between that aspect of the information and, say, the name and how much had been contributed? Well, that's just the fact that there was additional pertinent personal information that is not available on the Internet from the commission that can only be obtained by obtaining the written report. We want the written report to be expunged. But I thought – perhaps I didn't say it clearly. I thought that that information is all available on the Internet now. Somebody did – we do not know the source of the information. Okay. But somebody did MapQuest based upon home addresses. We do not know if they used the written report or if they just used the Internet to, you know, use the name and popped up addresses. We don't know how they did that. Let me focus on the ongoing concern component. So the Protect Marriage continues to operate. You will get new donors, presumably. Have you gotten new donors that were not already disclosed that you'll have to disclose in the future? And you intend to take similar positions if there are subsequent elections. Is that correct? Subsequent ballot measures to deal with the general issue of Protecting Marriage. And they are being circulated right now. And so this was – this Prop 8 election was a particularly controversial, high-profile issue which got a lot of attention. But now seems to be – that seems to be resolved. So are there going to be in the future similar type issues that will be initiatives or referendums that would raise the same issues as the pre-Prop 8 election? Well, it will raise aspects of Protecting Marriage which we expect to be involved in in the future with respect to ballot measures. Would these be the same entities following up on Judge Ikuda's question? Right now, I assume it's protectmarriage.com et al. that lists this. If you're raising money right now, is it being raised by this entity or a different entity with the same purpose? They're not raising money right now. They won't until they decide to become involved in a future initiative. And it will be the same group. They will file an amendment and show that instead of Prop 8, it will be Prop 1. But it will be the same entity, though. The same entity. Okay. So is this – They have kept it open for this purpose. They're a coalition of people involved about, you know, concerned about Protecting Marriage generally. So in Bromsicle, I guess – I mean, the two are Bromsicle. The two cases, the other ends of mootness are the Bromsicle case and the Doe v. Reed case. And Bromsicle made findings about that that particular organization would continue in business, was an ongoing concern, and so could face similar types of problems. So your position is that Protect Marriage is more like the entity, human life in Washington than like the entity in Doe v. Reed. Is that – Well, as far as this ongoing activity is concerned. In Doe v. Reed, that referendum committee shut down. So it had no future activity. Did you raise the point with the district judge that you intended to keep raising money with this entity? I don't remember seeing that in the record and certainly not in the district court's order. Is that a new thing that you've raised, or is it there somewhere in the record and I didn't see it? I don't recall that we raised it with the district court judge, but it was, you know, it was very soon after this, and, you know, people, you know, developed their plans as they go along. There was no mootness concern raised at the district court, I take it. It is still open today, several years later, and the reason I'm giving you is not in the record because that decision was post the decision of the district court. So I'm giving you that reason. I see my time has passed. Your friend over there, the professor, is waiting. Good morning, Your Honor. May it please the Court. Good morning. Let me take up the mootnesses because I do think there's some peculiarities in the way the California system works that you need to be aware of. In the Doe versus Raid case, it was exactly the same documents that had been scanned and that were easily available on the Internet. That's not the case here. And, in fact, if you do an Internet search to try and identify individual donors, the first place you're going to go to is the Secretary of State's website and the contributor information. That information is not available on the Internet to the same extent. And, in fact, the principal mapping site I checked last night is not even up and running anymore. So there is a great deal of value and efficacy in reaching the merits of this issue. So you're saying, Professor Eastman, that there's X number of names and addresses on the Secretary of State's site. No one has taken all of those names and put them on the Internet. Is that correct? That's correct. And is that evidence in the record? That evidence is in the record. Where in the record? By looking at the websites that they had listed and what information was there. So, for example, one of them listed only $5,000 and up donors, where the Secretary of State's is $100 and up. And so there's a lot of additional information on the Secretary of State's site that is not available, certainly not yet, on the other. The second thing is even the mapping. When they could cross-reference to get home addresses, they put that on the map. But many of the mappings were just to the city, which is available on the Secretary of State's website, but not the additional information of the home address, which raises the particular concerns of the threats of harassment that is the real focus of this case. So I think for both of those reasons. And then the third one, Doe v. Reed specifically recognizes that that was petition that was not tied to the election cycle, whereas our donor information is tied to the election cycle. It's the quintessential capable-of-repetition-yet-evading-review exception that Doe v. Reed recognized, but that was not at issue in that case and it is at issue here. So for all of those reasons, I think the mootness is we can get beyond. On the merits, look, the district court added a lot to the Supreme Court's test. You know, the normal test on whether there's a reasonable probability of threats and harassment that are going to chill people from exercising their First Amendment rights. It instead added you had to be a minor party. It had to be a vilified cause. There had to be evidence of directly attribution to the disclosure and no government hostility. A motive of harassment directly related to the views and proof of a negative effect. None of those are in the Buckley test. And we don't need to speculate on whether the evidence here rises to the level it's necessary. The Supreme Court has already done that for us in four different opinions. I was going to say, is Buckley still a test in this or would actually Doe v. Reed add something to this? Well, Buckley is still the test. I think Doe v. Reed applies it. Doe v. Reed confronted the facial challenge and it rejected it, but then it remanded for consideration of the as-applies challenge. That's exactly what Buckley says to do. And, you know, in Doe v. Reed, I mean, look, Justice Alito's concurring opinion, and this is not because he disagreed with the majority. He's elaborating on why it's being remanded. That said, I don't understand how the Petitioners in that case are not going to prevail on the Buckley test because of all of the evidence that went on in Proposition 8. In other words, in our case, he was using it as the quintessential example of when you do meet the Buckley test. The same thing is true in Citizens United. Citizens United made an argument about the threat of harassment, and the Court rejected their claim because it did not rise to the level of threats and harassment that this case did. And the Court specifically referred to two amicus briefs that identify all the evidence we have in the record in this case and specifically called it cause for concern. So what the NAACP case was in the 60s and the Socialist Workers case was in the 70s, the quintessential example of what meets the Buckley test is our case here. And the Supreme Court recognized it in Citizens United. Justice Thomas elaborates that at length to the point that he calls into question having these disclosure rules at all, certainly in the as-applied context that we're raising them on the Supreme Court. Counsel, how do we reconcile whatever one may think of the district court's opinion? He does make the point that you won, that you had millions and millions of dollars that were successfully raised. You won the proposition contest. Many of the people involved had never previously been involved. It's a political activity, and anybody that's served anywhere near politics knows it's a rough, rough game. So you say that we're not to take into account the minor party concept, which shows up, of course, in some of the cases you mentioned. But how can we avoid taking that into account to some degree? Because if you have people who perhaps represented the majority of the state at that time, who raised the money, who were successful, isn't there far less of a concern than, say, the Supreme Court had when the NAACP was going to have to disclose its membership list in Alabama at the height of the reaction to Brown versus the board? Well, the discussion of minor party status in Buckley and in socialist workers was indicative of why in that particular context there was a fair, reasonable presumption of things. It's not an element, and I think for very good reason. As the Court has recognized repeatedly, there are lots of reasons why you might have that reasonable risk of threats trying to silence people. And that's exactly the campaign that's gone on here. It went on both before and after the election in Proposition 8, and it has continued to this day to the point that it has become part of the strategic effort to try and prevent people from participating in the political process. Help me with the facts here. One of the things about this case that is challenging is the fact that most of this activity occurred after the election. Most of the allegations of harassment occurred after the election. Isn't that correct? Well, I'm not sure I would say most. There was a lot of evidence before the election and then a lot after the election. Anyway, by my reading, the most serious allegations occurred after the election. Is that a fair statement? Certainly what we have in the record right here. Right. Yes. Okay. So if that's the case and the associational right involved is the right to gather to oppose something you feel strongly about, you do so. You're successful. The election is won. And then you move past that. And most of the evidence that you have deals with things that had occurred as a result of your success at the ballot box. Is there a difference between pre- and post-election consideration? Your Honor, one difference is that post-election the government's interest in disclosing that information at all goes down. Because, you know, their claimed informational interest is that the voters know what they're voting on. Right. That goes away. And so I think that that would tilt the balance in our favor rather than the other direction. The second thing is, as my colleague pointed out, these are ongoing committees. Certainly NOM California PAC is a general purpose committee which is going on. And we've got fights heading on elsewhere in the country. And as the Court in Buckley and elsewhere has recognized, it doesn't even have to be the particular committee, but those that are raising similar issues, which is why we're seeking not just injunction but declaratory relief here that we've met this standard. So does the question as to whether on an ongoing basis, we had this one incident with a great deal of controversy, as on an ongoing basis whether these past events raise a reasonable threat, is that a legal standard or is it a question of fact? So how would a court analyze that issue? Would this have to go to trial, assuming we agreed with you? No. I don't think so. I think you can look at the evidence that's in the record and try and assess whether that meets the Buckley standard. And if you go down the checklist of things that Buckley and McConnell and Citizens United, you know, identify, threats, death threats, by phone. But those were all immediately associated with the election. And so it seems that there would have to be a determination that the same sorts of threats and events would occur in subsequent incidents, correct? And that's where I have a question as to how that determination is made. Well, I think in Socialist Workers, where they looked at evidence of things that happened in other states, they recognize that when you're fighting a similar issue, that other evidence is going to be relevant for making that determination. And I think that's important. You know, at some point, dust will settle on this issue to the point that these kind of threats probably won't be there. We're not even close to that yet, as the ongoing evidence indicates. Let me suggest this to you. You're out of time. This is a very important matter. So we're going to hear from the other side. We'll give you a brief response. So figure out about two minutes response to rebuttal. So let's hear from the other side. Thank you, Your Honor. Good morning, Your Honors. Molly Lee for Defendant Appel-Leese. I'd like to start by addressing the Court's mootness question and then answer any questions the Court may have about the as-applied challenge. Co-counsel from the Fair Political Practices Commission will address the facial challenge. Regarding mootness, I want to be very clear. There are four plaintiff committees in this case. Three of those committees were formed specifically for the purpose of supporting Proposition 8. Proposition 8 is over. All contributors have already been disclosed. That information is publicly available, and there is no effective relief that can be granted by the Court with respect to those committees. To your knowledge, you represent the Secretary of State, among others. Are those entities, were they, are they incorporated in California? They're formed ballot measure committees in California, yes. And are they still viable as a matter of law? They are. So they are, of the three Prop 8 committees, two of them are still technically active committees, which means that they are still filing reports. Right. They are not in a position where they could currently go out and campaign for other ballot measures for other candidates. Because they would have to file other papers, but they are, there is a, I don't know technically whether it's articles of incorporation or what they file. But those are there. They're filing what the Secretary of State requires annually, right? They file these pro forma reports, yes. But there's no, no new contributors are being disclosed on these reports. So your opposition comes in and says this is an ongoing problem. We intend to continue the process, and it will go on in California. Now, it seems to me that Wolfson clearly gives standing and it's not moot. And what's your response to Wolfson, which was directly on point in my view, and a well-written opinion? Your Honor, I'm not. We don't concede that these committees are really ongoing. No, they made the statement. They made the statement. That's all that happened in Wolfson. The person said we're in a political campaign. I intend to go ahead and assert this position again. And we said that was sufficient. And that was at the appellate level. That's Wolfson. Why isn't that sufficient here? Your Honor, I don't think they have a ripe claim here. In order to have a ripe claim, they need to show that there's a genuine threat of imminent enforcement, and that requires that there's a concrete plan to engage in regulated conduct. That wasn't true in Wolfson. The only thing we had was the person said I'm going to do it again. We didn't require a concrete plan. I want you to distinguish Wolfson. Your Honor, I'm not in a position to distinguish Wolfson. I can tell you that in Libertarian Party v. Bowen, the Ninth Circuit very recently defined the necessary concrete plan as one that would tell you when, where, and who would be involved. Yes. In Wolfson, we said that there's an exception in a political context where people are running for office because the times are so short. And so we allowed just the statement. That seems to me is very close to what we have here, and that would give us standing. And in addition to that, there would be standing for the constitutional challenge, wouldn't there? No, Your Honor. Plaintiffs need to show. The $100? The $100 limit? Even for a facial challenge, plaintiffs still need to show an injury. In fact, that's an irreducible component of Article III standing. And it's lacking when they can't show an imminent injury. Is that different from mootness? I think the ripeness and the mootness inquiry are related but distinct. But that's mootness. To the extent that there is ongoing campaign activity, which I don't think there is evidence of in the record. Aha. But in Wolfson's, we said you only had to say it. You didn't have to have it. And here we don't even have those specific statements of intent in the record. Just made. We said you could do it at the appellate level. We didn't have to be in the district court record. Your Honor, here there is nothing in the record or that I've heard from distinguished opposing counsel today that says exactly what campaigns they would engage in, what  No, he didn't. And all the person said in Wolfson was, I intend to assert this position. It wasn't anything more than that. That's what he just said. And I just don't see how you get around Wolfson. Your Honor, I would cite Libertarian Party v. Bowen. I would also cite the evidence that the Court considered in Human Life of Washington v. Bromsicle. I understand all of those cases, but Wolfson still is a Ninth Circuit case. I hear that, Your Honor. Okay. If, pretending we were in law school for a moment and that Wolfson didn't exist, what is a concrete plan from your perspective? Your Honor, it's one, as the Ninth Circuit explained in Libertarian Party v. Bowen, it's one that says when, where, and who will be involved. So in Human Life of Washington, for instance, the plaintiff submitted a verified complaint that had details of its plan's communications, which included scripts for fundraising letters and for radio ads and for phone calls. So you're saying that in order for these folks to have standing, they have to have that level of specificity, even though they have an existing entities that are still technically in compliance with California law? Your Honor, they need a concrete plan. They need to show how they would be harmed by the regulation. Well, that's a different deal than what's a concrete plan for moving forward. That's what I'm troubled about. It sounds like you're saying basically you've got to have your whole plan mapped out, you've got to know who the funding sources are going to be and exactly what you're going to do and what your TV buys are going to be. That can't be the standard. Your Honor, I don't think the standard is that high, but you do need a specific intent to engage in conduct that would bring you within the scope of the regulation. Well, these gentlemen have just said that they intend to continue these activities, they continue to intend to raise money, and they will pick these targets as they come along. Isn't that sufficient to show standing? Your Honor, it just isn't under Libertarian Party v. Bowen. It doesn't come close to the specific intent that was articulated. Does Libertarian Party v. Bowen conflict with Wolfson, the earlier case? Is it a violation of Miller v. Gammey? I don't know the answer to that, Your Honor. Shocking that we had one Ninth Circuit case that was inconsistent with another. I do think on the facts of this case, there's really, I think the important thing here is that there's less of a showing of specific intent, and there's certainly not the kind of concrete plan that you've seen plaintiffs present in other recent campaign finance cases. Let's assume for a minute, arguendo only, of course, that there is standing. There is no mootness here. Once you move on, you said you're going to do as applied and he's going to do facial. Is that right? That's correct, Your Honor. Why don't you move forward with that argument? So on the as applied challenge, Your Honor, I want to be clear that this case and the evidence in this case is not similar to what was before the Supreme Court and NAACP or in the Socialist Workers Party. In both of those cases, there was evidence of a widespread pattern of serious harassment by both the government and private parties, including significant physical violence. Here's my concern. The Supreme Court recites a standard, a test, in multiple cases and doesn't seem to worry about the exact context as long as there's this reasonable probability of threats, harassment, whatever. They refer to economic reprisals and the like. The district court didn't adopt that test, that language of that test, but added, as opposing counsel says, a number of different factors that it was looking at. Why wasn't that the wrong legal standard rather than complying with the statement, the exact language that the Supreme Court had established and repeated in multiple cases, most recently, I think, in Citizens United? Your Honor, the district court here did look at the Buckley language, which is whether there's a reasonable probability of threats, harassment, and reprisals. And in order to determine what satisfied that standard, the Court properly evaluated the evidence that appellants have submitted and compared it to evidence that had been deemed sufficient and insufficient in prior cases. It found that appellants' evidence was lacking. Most of their evidence is typical campaign conduct. So is that a legal standard or is that a factual issue? I mean, in other words, it was disputed as to whether there were disputes about what the evidence meant, what the evidence was, what the evidence meant, and then there was dispute about whether it met the reasonable probability standard. So is that something appropriate at summary judgment or is that something that would have to go to trial? So help me on that. I mean, the district court said, here's the evidence. I don't believe it. I think the LDS Church might have been attacked for other reasons. You know, so a number of sort of factual evaluations there. I think whether the reasonable probability standard is ultimately met is a legal determination. The evidence that appellants presented, which was 58 DOE declarations, there wasn't any dispute about the fact of what was in those declarations. I'd like to pursue that. I think Judge Akuta's question is a good one. It's clear that this was on cross motions for summary judgment. No question about that. And the judge only had to make a determination whether there's a material fact in dispute. As I read the record, I think there was a material fact of dispute. He was making factual allegations. He was even saying that you had to have millions of reasons. Clearly, he was making determinations of the facts, in my view of reading it, if we were to conclude that he was making factual determinations of material facts in dispute, wouldn't we have to send it back down for reconsideration? Because at that point, he shouldn't have been making those determinations. Your Honor, if you do determine that there were factual allegations in dispute, then remand might be appropriate. Here, from the party's perspective at least, the factual facts were what they were. And the question was whether they met the legal standard. Kennedy, did you dispute the facts? No, Your Honor. So there was no. So for purposes of a motion for summary judgment, your position, I gather, would be, well, how can there be a material issue of fact? They allege some facts. We didn't dispute them. That's right, Your Honor. So the court took them as they were. That's correct, Your Honor. With one clarification, there were the 58 Joe declarations, which were the only admissible evidence that appellants submitted. Then there was a whole set of hearsay evidence. Court didn't even rule on that. It didn't say that there was a motion to strike, but said it was moot because it went off on a different ground, right? That's correct, Your Honor. So we really don't know as a matter of law whether the evidence was admissible or not. We have we can look at it and have our own views, but the district court, in fact, didn't rule. I'm interested in just one question, something that really concerns me about whether we have a hybrid here. When Hiram Johnson set up the progressive era initiative referendum and recall, it was because he wanted to get around a corrupt legislature and governor, something that would never happen today, of course. But the initiative function is a legislative function. It's a wholly political function. And when somebody signs up to propagate an initiative, you are, in effect, a quasi-legislator. You're part of the political process. Does that in any way change our analysis as compared to, say, for example, the NAACP case where you have people who are in a very different function and who perhaps their lives were threatened and so on? Does Buckley apply equally or in a different way to what we're dealing with here, or is it absolutely the same? Your Honor, I think you raise an important point, and really your question goes to the important and compelling state interests in disclosure of an initiative. In the NAACP case, there was no evidence that there was a compelling state interest in the state of Alabama obtaining the NAACP's membership records. This has been incorporated into the Buckley test when it's weighed the burdens of disclosure and the interest in disclosure for minor parties. That's what the court did in Buckley, and that's what the court did in Brown. That's also something that a court should do in any First Amendment case. Has the Supreme Court made a distinction, though, I guess? I was impressed by the Supreme Court just repeating the same formula over and over in a range of circumstances, not making much distinction there. Your Honor, the Supreme Court hasn't found that any party submitted evidence that even satisfied the reasonable probability test since Brown. And so there's been no occasion for the court to consider what additional showing would be required for a major party. In both Buckley and Brown, the court took this two-prong inquiry. First, it looked at balance, the interests and the burdens, and then it looked at whether there was a reasonable probability. For a minor party, just defining a reasonable probability could be enough because you know what the burden is. For a major party, the burden and benefits of disclosure are different. And so a court looking at a major party requesting the exemption would have to do that same balancing. Now, there's a question. Was that party a political party? Is it necessarily a political party, or is it a minority group? It can be a despised minority group. It doesn't need to be a formal political party, Your Honor. Let me ask you one other question. I reviewed carefully the district judge's long decision, and he incorporated into his decision, his earlier decision, in denying the preliminary injunction. The test for a preliminary injunction is far different from that of a summary judgment. Isn't that in effect his opinion, because clearly he should not have been using findings that he made in a preliminary injunction with a different standard than in a summary judgment? Doesn't that in effect the entire decision of the district judge, and we have to have him redo it and do it right? No, Your Honor. I don't think that's necessary in this case. To the extent that the district court judge quoted passages from his prior decision, he was finding that those – that that analysis satisfied the summary judgment standard. Yes, that's the problem. It doesn't. And he says, I haven't changed my mind. So he was really referring back to the time when he had a different burden than summary judgment, and it's troubling to me that that entire package is what we have to review. So did the district court take the lights – take the evidence in the light most favorable to the nonmoving party? I mean, on cross-summary judgments, it's always tricky because you have to look at the fact in different light as you look at the two summary judgment motions, but his resolution of factual issues did not, it seemed, take all inferences in the light most favorable to the plaintiff whom he eventually found against. Your Honor, he did take the evidence in the light most favorable to the nonmoving party, and there he – What do we do with statements like, well, they say that the Mormon Church was attacked, but it could have been for other reasons? I mean, that struck me in particular as, shouldn't he be taking the inferences in the light most favorable to the plaintiff? So in that instance, Your Honor, there were newspaper articles where these incidents were being investigated, and law enforcement itself was quoted in those articles that plaintiffs submitted as evidence, saying it's not clear why this happened. So I think even there, this wasn't the district court judge on his own making these inferences. This was him really looking at the evidence and reading the evidence that was before him. I do want to save some time for co-counsel. Get your other friend there. I'll ask this question to him then. Good morning, Your Honor. Zachary Morazzini with the Fair Political Practices Commission. Good morning. I'll ask you, what is a major party? I think appellants are a major party. And why? They are an ideological movement that managed to raise over $42 million for one single ballot measure, and they were wildly successful. Oh, success. Based upon how much you raise and whether you're successful. Yeah. For example, let's just say you had, somebody used the term a despised political group. Let's say that the Ku Klux Klan resurrected and raised some kind of an argument that was in favor of some social welfare matter, that everybody was going to get $1,000 from the state. And they were wildly successful. Would they be a minor party? Would they be a major party? I think they would be a minor party. What I would do as a court is I would analogize as closely as I could to the established precedent we have here, which is the Socialist Party and the NAACP at the time periods in which the Supreme Court looked at them. But those were factual determinations. It wasn't policy. For example, suppose there are some African Americans or others that are trying to do away with a poll tax in the South. They don't have any party. They have a small group. They know they have to get a large number of whites to vote, so they have a great party. They raise a lot of money, and they win. Is winning enough to distinguish between major and minor parties? Not at all. But what the Supreme Court was concerned with was the risk that this movement would wither on the vine, that the ideological concepts would be removed from the marketplace of ideas. That's what animated the Court so much in those cases to set the flexible evidentiary standards so low and a reasonable probability, because there was a huge risk that this Socialist Party would vanish off the face of American soil. Okay. So what difference does it make whether or not this particular group is called a political party or otherwise? None. And what difference does it make to the amount of harassment they receive as to whether they win the election? Sure. I was using appellants as an example because that's the case before this Court. You don't have to be a political party. It's been called in the district court a minor party. A minority group with any shared common goals or association could qualify if the risk to that movement. I think that's the key aspect that the Supreme Court looked at. There has to be an actual risk here. For an amorphous organization of individuals across the world or just basically in a minority view, a Socialist Party, it makes no sense. Why does it not make sense? If all of them are united to a... They say that they believe in marriage being a contract between men and women. That covers everybody in the universe? That's their allegation, all similarly situated individuals. Okay. All right. It's unworkable, Judge. It may be, but it's the case we have before us. And what you're saying is that we make a determination upon their goals and then we choose as judges whether they're minority parties to be protected or not. Is that the power you want to give the Court? I think that's the power the Supreme Court gave you. It basically directed the bench to look at the burdens and balance them against the benefits here. Is the Green Party a major party if it elects any state legislature, legislators? I think that would have to be looked at. I don't know the Green Party very well, Your Honor. They know you. You probably do. But what the Court would look at, is there a significant fear that the Green Party, if its contributors are made public, is there a risk that that movement is going to disappear? So what you're really doing is the very thing that Judge Wallace indicated. You want to empower the judiciary to, on an ad hoc basis, appraise, based upon our own lights, presumably, whether a party is at risk. Is that basically what we're talking about here? I think that's what the Court did in Brown and Socialist Party, Judge. I think that's exactly what the Court did, was if the fear, the threats to this group that's before the Court are so great. Is the Republican Party at risk? I can answer that, Your Honor. But I think the Court should embrace this, because this is the standard the Supreme Court developed. They developed it because of the risk to those parties, and it shouldn't just apply across the board to anyone who comes into California and says, I want to get involved in this hot social button issue, and guess what? I'm a minor party, and so I don't have to disclose my donors. We appreciate both of your arguments. We could probably talk about this for days, because it's a fascinating subject. But we're going to give the other side two minutes to rebut, and then we will adjourn. Thank you very much. Thank you very much. Thank you, Your Honor. First, I'm going to pretend that Wilson was decided by the Ninth Circuit. And I'd like to refer you to the State's brief footnote number 1, where they acknowledge, quote, a third committee, which is the NOM committee, formed after the election to raise and spend money on ballot measures and candidates in future elections. And then they cite paragraph 33 of the complaint. So the same allegation that was in Wilson is in this case in the complaint with respect to the third committee. You've heard additional information with respect to the other two committees one of the other committees, the Protect Marriage, which has developed since then. Secondly, you are obligated to do an independent examination of the record. This is a First Amendment case. You're not bound by the fact findings of the district court. You're to make an independent examination and do your own fact finding on whether or not how the evidence should be weighed and what facts have been established. In that regard, Buckley's standard was one of the examples of the evidence you would look to is, quote, past or present harassment of supporters of this particular view. So it doesn't even have to be current activity, which we have a plethora of, that it can be past, you know, an election or two ago. It can even be sufficient to support the reasonable probability. And, of course, reasonable probability is a future. In other words, what's going to happen in the future? So it's a prediction. So much of their argument is, well, what has happened? Well, but it's a prediction of future activity. And now, the Supreme Court found so significant the evidence in this case that in Hollingsworth, they overturned the district court's decision to have a publicly televised trial. And one of the reasons, and they cited this case, this case is evidence of the harassment of supporters of traditional marriage. So the Supreme Court itself has actually acted on the record here and relied upon it to overturn a decision of the court. With that, I'm going to just ask you one question that I just need to know and answer it for another issue. Are you taking the position that when the Attorney General of the California refused to defend the case initially in the Federal Court, that that is evidence, that abandonment is evidence, some evidence of the State harassing your clients? No, it's not evidence of the State harassing the clients, but it was addressing the new factor that the district court used about whether or not there was any evidence of government, you know, support or opposition to the position of the people involved here. We do feel abandoned. I mean, the Governor, the Attorney General, everybody abandoned properly. Well, it was far more significant than that. It went all the way up to the Court of Appeals. The Supreme Court now has vitiated. The district court opinion is no longer, didn't have standing. We're back to where we were at the beginning. So it was something that prejudiced everyone in California. But my question really is, how does that fit in? Does that any, is the Attorney General's position, decision to not defend, which resulted in these results, is that a part of your case as far as trying to show the validity of your position? Yeah, I don't think it's a significant part, no. I think it was an attempt to respond to the district court's new factor, which is whether or not the government was involved in the harassment. Yeah, okay. Thank you all for your argument. This is obviously an important matter. We will take it under submission, and the Court is adjourned today.
judges: Wallace, Smith, Ikuta